Thank you, Your Honors. May it please the Court, my name is Patrick Perotti with Dworgen & Bernstein in Cleveland, Ohio, on behalf of the appellant. We would like to start out with the question that the Court asked. The Court asked us, is the CAFA jurisdictional exemption equivalent to the Eleventh Amendment of Immunity that we to talk to my opposing counsel, but our position is it is. Both of those hinge on whether there's a bar to a judgment. Here the bar would be immunity. Now the District Court found that there's no immunity. Therefore, the defendant can be subject to a judgment. And why, assuming that we want to get into that issue, we think the Court is right, but just to talk about it briefly, why is the Court right is because the question is, who pays? As the Court said in Hess, and as this Court said in, I think it was Rustock, that's the determining focus of this six-part test. Could I stop you there because you've already pivoted to the Eleventh Amendment, and I'm not sure that's right. So I'm looking at the statute D5A. It doesn't say would be foreclosed. I mean, if the statute said is foreclosed or would be foreclosed, I totally get you. But the statute doesn't say is foreclosed or would be foreclosed. It says may be foreclosed. What — which presumably may be means something different. What do I do with the words may be? Doesn't that suggest it's not whether it is foreclosed, it's whether it may be foreclosed by? To tell you the truth, I don't know what you do with that. Because if we're to read may be as any possibility, then that means that under no circumstances could there ever be a case in a Federal court by a foreign citizen against another State. Maybe that's the right answer. Why is that not the right answer? Well, hold on. Not never. You can't use CAFA, right? So CAFA itself — So that can't be right. So first of all, if you have Federal question jurisdiction under 1331, this statute is irrelevant. If you have what I guess I'll call regular diversity jurisdiction, this statute is irrelevant. This statute only comes into play when you're trying to bring a State law claim in which there is not complete diversity. So it's a subset. I mean, I agree it's not insignificant, but it's not that no foreign citizen could ever sue a foreign State. A State law claim where there is either not complete diversity or where there is complete diversity but the minimum controversy. There's no $5,000. Sure. But I mean, I guess when I put it that way, it doesn't strike me as totally implausible that Congress would have meant to do that. Well, that would be a seat change to what happens in Federal courts. Couldn't maybe be an indication that somebody could waive it? Yeah, absolutely. And that was the rest of my answer is that the issue of immunity can be waived, all right? The State can consent to jurisdiction of the Federal court in order to grant a judgment in money, and it can be waived. It must then — I don't have the case in front of me, and if you want subsequent briefing we can do that — but the U.S. Supreme Court has said that the Federal courts don't invite issues. They wait to see if they are raised. This is a defense. It has to be raised. Well, wait, hold up. You want to cite that case, I can cite a whole bunch of cases that say Federal courts have an obligation to assure themselves they have jurisdiction. This isn't a jurisdictional statute. I don't know if this — I don't know if this is a jurisdictional question rather than a deferral of exercising. I think there's jurisdiction here. The court has jurisdiction based on CAFA. The question is — Well, but I'm not sure that we do, because the first words of D-5 are paragraphs 2 through 4 shall not apply if — well, 2 is the thing that you're relying on to give you jurisdiction in the first place. So if we're covered by this statute, then we don't actually have jurisdiction. I may be wrong, and this may be something that the court would look at in the first instance. But I think, rather, the court determines its jurisdiction and determines, is there a defense been raised by a party who has the right to raise it, the state, a state official or a state agency, that would bar judgment? And otherwise, I can cite you — not now, but in anything post-argument — I can cite you dozens of cases under CAFA in which private citizens of states have sued other states in class actions for relief in Federal courts. So I was not able to locate any opinion that really addresses this specific question. There isn't. You were not able? We couldn't find one either. No. But we believe it was correct because we believe it hinges on whether there is immunity. There clearly isn't immunity, and I'm not going to spend much time on that. Can I go back? You wanted to say the parade of horribles that you suggested was interpreting may be foreclosed to mean even possible. Yes. Right. But you know, we often think about may as sort of a plausibility standard, like if there's a plausible claim, right? And so we've got to do the first part, right? Is the defendant a state and a state official or a government entity? And it seems that we have a government entity here. So it's narrowed down that at least the Parkway is a government entity. But why don't we read may be foreclosed to mean there has to just be a plausible claim that relief is foreclosed. Well, then that would eliminate the jurisdiction in the federal courts for CAFA cases even when you look through the law and facts and you find out that there is no immunity. Yes. That's exactly right. And I don't believe that that's what this means or this should be interpreted to be. Okay. Do you have another argument other than that would be really bad policy? I have the argument that when Congress grants jurisdiction, it doesn't grant it in a way that allows arbitrary actions by a federal court which would ignore the facts of the law. And here, when you get down to the bottom line, there is no immunity. There's no question about that. There's neither legal immunity nor under HES nor is there functional equivalency immunity. Because all the arguments that have been made here were rejected correctly by the district judge because the state of West Virginia is not liable and is not functionally equivalent to being liable for any of the judgment that I might collect against this agency at all. HES makes it as Justice Ginsburg of blessed memory said in her opinion in HES, they made that exact same argument. They said, but wait, the agency sometimes contributes money to the state and since it does, if you were to take a judgment against the agency, that would lessen the amount of money. It could contribute to the state. Justice Ginsburg said, no, no, no, no. You don't look at the profits and benefits of the agency. You look at the liabilities and the detriments. And so that issue really is frozen. Why does that make sense? I mean, assuming that the court said that, why would it make sense to look at liabilities but not profits? I mean, just from a perspective of why would that ruling make sense? I'm not sure that you have to read HES that way, but why would it make sense to look at liabilities but not profits? Because as the court said and as the Supreme Court said, the determinative standard is who pays. And in this case, the Right, but the paying of an opportunity cost and the paying of an actual check is not economically different. I respectfully disagree. In HES, the court specifically addressed this idea that since an agency is part of a state, no question, and the agency may contribute money, no question, that therefore the agency is the state and there's immunity. That's not what the standard under the 11th Amendment is. The standard is under 17-16A2 of the West Virginia Code. Not only are they not liable for this, contrary to what they say on page 27 in their brief in which they cite Appendix 25-29, that's not what Appendix 25-29 says. That's an insurance policy. They cite that section as saying that the state has indirect liability, that the state's credit rating is affected, and that all sorts of horribles will happen to the state when under this statute, none of that happens to the state. And that's exactly what was addressed in HES. And HES is controlling authority. HES is right on point to this issue. If I may now, with your permission, move quickly to the other issue, the issue of the APA exemption. The defendant managed to misfocus the district court on what was the source of the challenge rule, of the challenge sanction fee here. Was it the Electronic Toll Collection Act or was it the Enabling Act? But that makes no difference. She was charged the sanction. So that's an agency action. The only question is, was that agency action, that rule exempt from the Administrative Procedure Act? And we don't dispute that these fees are legislative rules under the West Virginia APA. Neither does the defendant. Those require rulemaking. And why are they legislative rules? Because they subject the individual to a criminal liability. So it's right on the ticket. So can I tell you, I think the hardest question for me about your position on this issue is the one the district court identified. What is it that you think that in the real world the provided clause actually accomplishes? Because the provided clause seems to me to say, as I read the statute, tell me if I got this wrong, in general, if you want to impose tolls on roads in West Virginia, you need approval from the state legislature. Provided that that requirement does not apply to the turnpike. But as I read your argument, it says, well it turns out that under the turnpike you also have to do that because those are legislative rules that under the APA means you have to go through the legislature. So then it turns out that that provided clause doesn't really do anything in the world and that strikes me as an implausible interpretation of West Virginia law. So what's the best response to that? You're right and you're wrong. As Judge Mott said, let's look at the statute in the last argument. Let's look at the words. That's not what the words of the statute say. The words of the statute specifically say and I have a copy if you need. It's 1716A13. It says the Parkway Authority is authorized to fix revised charge and collect tolls and fees. So they have the authority to assess these charges. They could assess it for the toll of the transit of the road. They could assess it for a penalty. They could assess it for whatever they want. There's two things in West Virginia that require rulemaking. The APA does. This statute also does independently. It goes on to say provided that the Parkway Authority may not charge tolls or fees for transit over an existing road without express legislative authorization for charging the toll or fee. What we are challenging here is not a toll or fee for transit over a road. We are challenging a penalty and a notification fee which is in a totally different section of the West Virginia Code. The exemption that the District Court found which was correct for this part of the Code is provided that an existing road does not include the West Virginia Turnpike. We agree with that. The West Virginia Turnpike does not have to comply with this section of the West Virginia Code that indicates you must do rulemaking when you're enacting tolls or fees for transit over the road. That's not the rules we're talking about here. The rules we're talking about here are rules that come in to impose a penalty and if you look at and this is JA 140, District Court's opinion, first full paragraph, second sentence. The judge summarizes the issue and the problem exactly. When an agency implements a legislative rule it must do so in compliance with the APA unless explicitly exempted from doing so. Agreed. The Parkway Authority, however, is correct that it is exempt from the legislative rulemaking process when implementing and collecting tolls and fees related to travel over the Turnpike. That's incorrect. That's not what the law says. It is exempt from this section when you are dealing with the enactment of tolls and fees for transit over the Turnpike. We are looking at section F. West Virginia Code 17-16d5 I'll give you a couple of seconds if you have that up there. If you would like a copy, I have some. Your Honor, does the court have it? It's 17-16d-5 and it's F. In addition to the amount of unpaid tolls, this is the legislature speaking, we're telling you folks this is something different. In addition to the existing tolls. That's what they're saying. The authority shall assess a reasonable administrative fee in the amount determined by rule promulgated by the authority. There's no exemption there from the APA or from anything. This is separate. Look at 17-16d-14 which is the last section of this part of the Code. Rule making authority 17-16d-14 The Commissioner of Motor Vehicles and Parkway Authority, the defendant shall propose rules for legislative approval in accordance with the APA for the implementation of this article. There is no exemption anywhere in the Code. The exemption that they're talking about and that the District Court talked about was an exemption for a separate section of Virginia law that said regardless of whether it imposes a sanction, regardless of whether it meets the definition of a legislative rule folks in the Turnpike Authority if you're going to assess tolls for the transit over an existing road you're going to go to legislative rule making except for the turnpike. We don't have a problem with that. They can pass all the tolls they want without legislative rule making. This is not a toll for transit over an existing road. I'll reserve the rest of my time for response unless you have a question. Thank you. Could you possibly address that argument first so I can keep your eye? Absolutely, Your Honor. Good morning. My name is Stuart McMillan on behalf of the Parkways Authority. I think that we're jumping to code provisions that should not be jumped to. Well, I don't think this argument was made in the briefs, but maybe your colleague will correct me. Well, the argument that we have made is the authority derived from 1716A the enabling statute, Your Honor. What counsel was referring to is the electronic toll statute 16D This has nothing to do with the electronic tolls. This is in the record of a cash toll booth. The verification form that was issued and sent to Ms. Monaco was collected manually and sent to her. How could we possibly consider that under 12B6? Well, Your Honor, it's because when we made the actual complaint itself it's talking about a cash toll. Right. So you're essentially saying objection, that's not true. No, Your Honor. I'm saying that it is true. Absolutely true. So in that context, Your Honor, counsel is jumping to the wrong statutory provision. We at the Parkways Authority have had the authority to issue the tolls and the fees associated with those for over 70 years. That has not changed. Furthermore, Your Honor, if you look through sections Just so I understand, I want to make sure I understand the argument you're making. What you're saying is that Monaco's complaint in paragraph 30 alleges that she encountered cash only toll booths. Yes. And therefore, all these provisions talking about electronic tolls, she pled don't apply to her. They don't apply by pleading that she went through a cash... Frankly, it's not even set up the way it's supposed to be. In the future, we will have more electronic. We're not there yet. But yes, Your Honor, that is right. I don't care about the real world. I'm unfortunately an appellate judge. Real world doesn't really matter. But your position is... I didn't exactly follow the provisions. The point of the D provisions is that they're for electronic tolls. Since she pled in paragraph 30 that she encountered cash only toll booths on the West Virginia Turnpike, we now know that, based on her own pleading at 12B6, that the D provisions don't apply. That's correct, Your Honor. And furthermore, in the record, her actual hand written where she signed the verification about not paying the toll and that's how they got the information. So it was clear and undisputed that this is dealing with a cash toll. Right, but I can't consider what's in the record at 12B6. Right? I mean, I'm just relying on the complaint. I understand, I understand. But it's just for to make you feel good about it. That never bothers me. Okay, well, all right. It always feels good. There we go. Thank you, Judge Mott. So with respect to the issues that was addressed at the beginning regarding CAFA, there are some there is some jurisdiction out there the 11th and 9th Circuit have looked at it. Not, it's quite on point. Those decisions the decisions that I'm aware of are about who is the primary defendant question. Not about this question, right? Right, but there's some dicta in there, Judge. Out of circuit dicta about an issue that was not the one before us? Well, well. Hold on. Tell me more. I will. Hold on, I'm setting it up so you can be, here we go. In the 9th Circuit there was a discussion about the use of the may. And what does that mean? Judge Richardson hit it on the head. The idea of how it works is simply this. If it's plausible and there may be immunity you are foreclosed. You have no jurisdiction. It is absolutely  Absolutely. And we contested jurisdiction. Not right quite on CAFA, albeit. But we did question jurisdiction under 11th Amendment. How this works under CAFA and looking at it and reading some of the dicta and how it makes sense in the statutory construction is if you're looking at a case and you have a state actor. Here we have the Parkways Authority which in my view is the state of West Virginia. But if you have You don't actually have to make that claim, right? Because you can make the narrower claim that it is a government entity and that seems really hard to debate. Judge Richardson, you're right. You don't have to go all the way to the immunity finding. Although we do have immunity under 11th Amendment. But Judge Richardson, you don't have to go there. The may is, hey, could this be foreclosed? Here we have a state actor. Let's think about the Parkways Authority. Let me go back because you used I think he used maybe might you used could Help me understand what you believe may means here. How do we interpret that? Is that like a plausibility standard? I mean, if a purely private citizen showed up and said, oh yeah, I'm a claim that I've got 11th Amendment immunity, right? Which would be implausible but he's alleged it. That wouldn't be sufficient, I assume. And so help me understand how I draw the line. How plausible or how likely does it have to be that your immunity claim works? We don't have a standard yet. And I take it that's something that we're going to develop. But I can tell you looking at the dicta from the Ninth Circuit in that instance there was a private company that did governmental functions. And they asserted that we have immunity because what we're doing is for the government. But that we know from jurisprudence throughout the country has been found no, you really are not going to get immunity. So it has to be more than just coming up there and saying with some sort of naked assertion that I'm the state of West Virginia and I'm entitled to immunity. I think you have to go a little further. You have to in the record, you have to establish that we're a state entity for jurisdiction. Jurisdiction, you have a record. You have to have some record of why you don't have jurisdiction or why you do have jurisdiction. So you have to say that we're a state agency. That's not hard to do. You have a governmental framework and a statutory scheme that is replete to saying we're a state agency. And that's the first part of it where the statute says shall not apply to any class action in which the primary defendant are state official or government entity. So you actually have to prove that piece, that you are a government entity. And then step two is, well may relief be foreclosed. And that's the probabilistic story. Can I ask you about the second thing that you're proving that you are a state agency? Is the Eleventh Amendment analysis identical here? It's a little different, Your Honor, and this is why I say this. With respect to this issue? No, it's not. It's not identical and this is why. And it's because you can find that there is a state actor and there may be immunity but you don't necessarily have to make the finding under the Eleventh Amendment that there is or is not immunity. I think that's what the may has to mean. No, but if this  clearly not entitled to Eleventh Amendment immunity, if this is a separate and independent because they deal with all their money, there's various factors that you look at. Right. Isn't that controlling? Yes. I mean, if you look at something and you can tell on its face that it's not going to get Eleventh Amendment immunity, then that exemption would not apply. I would agree with that. The first step of it would still apply, right? Because it would still be a government entity, right? So like, take it as a county, right? We all know that Eleventh Amendment doesn't apply to a county, but if we're applying the test, right, is the primary defendant a government entity? Yes, right? May relief be foreclosed? No. Right? So it loses, but not because it's not a government entity, it's because their claim for Eleventh Amendment immunity is not plausible. Right. That's the analysis, but what I'm saying what's different in the Ninth Circuit and the Eleventh Circuit, they even said we don't have to find Eleventh Amendment immunity. They say that in the case. The point of it is, is they're saying it may be foreclosed, but you don't have to go all the way to that point, but if it's on its face that they're not entitled to immunity, then that exemption does not apply. That's the only way that the may has a meaning and can work here. So in this instance, we are definitely a state entity, and I would also say that we have Eleventh Amendment immunity, and I'm going to say this because if you think about how we were created, if you look at our statutory scheme, our chairman is the governor of West Virginia. Our member, the cabinet secretary of the Department of Transportation. You're absolutely right about those factors, but you're wrong because of the funding we've always thought was the most important factor. We're not alone there. Well, I will say I may lose on the funding as one of them, but of course that's not dispositive as this Court said in Risto and Hutto. So can you talk for just on the funding point, can you talk for a minute about your interpretation or reading of Hess? Your colleague suggests that it's controlling. It doesn't come up until the reply brief, but the controlling Hess. Why do I read or should I read that to suggest that it's only about paying debts and excluding consideration of a reduction in profits? I think that I would look more to the Hutto opinion. I know, but stay on, I mean, if you're not that familiar with Hess, that's totally fine. Right. And because I've been more focused on That's totally fine. I don't want you to try to answer No, and the reason I say that you know, you have an entity like us and the question is we're not structured to retain profits. You can see in our code section. Help me understand. Let me back up to that just for a minute. What happens if just as a factual matter, you know this record a lot better than I do. What happens if the parkway makes money, right? The first dollars it looks like goes to pay debt. Right. Is that right? The bonds that it issues. Right. So what happens when the bonds are paid off? In the world, and I know we're not currently in this world, right? We're in a different world right now, yes. Totally fair. I understand how these stories work, but from a statutory perspective, again, I don't worry about the real world. I live in appellate land. So what happens when the money is, when the debt is paid off? Where do those dollars go? Those monies will go to construction projects for state roads in West Virginia. Through, not built by the Parkway Association, but built by DOT? This is... Or whatever y'all call your DOT. The Department of Transportation. Yes, Your Honor. The reality, the practical... And can you tell me where I look to see that? How do I know that the money, once debt is serviced, goes to DOT to build roads? I think you're going to have to follow the practical effect that's been espoused by the Fourth Circuit. And I think that's important with both the Hutto and the Risto opinions. No, no, but I mean, how do I see that from a statutory perspective? Like, you know, when the Parkway Association all of a sudden says, hey, we got extra money, and they go to the statutory code and they say, what do we do with this money? Where are they looking at? I mean, it's, the way it works, it's in the state budget. I mean, we're audited by the, we're audited by other, like other other agencies in the state of West Virginia. That money is actually pulled out by the state in order to use in other ways. When we have surplus money in the state of West Virginia, when that happens, gosh, that's a big deal. It's pulled out. And that, the reality of it is, Judge Richardson, is that there's a statutory provisions that are set out like they are. But I think it's important to understand, and this is why I'm looking at you, the practical aspect of this, of what we do. So could we address, oh, I'm sorry. Could, so at a, I guess maybe that raises a different question, because that then sounds like a factual question. Right? So if we're considering funding as we must, or sort of the obligations as part of the 11th Amendment of Immunity, it seems like what you're suggesting to me is that there's like a factual story that is not in the complaint that we currently don't have about how money actually operates in the state budgetary system. And I mean, I know enough about South Carolina's budget system to know that it's like a total black box. And I assume West Virginia is not totally different. But one of the things we do know is that this is within the authority's discretion. The use of the money that it derives from the sale of its bonds has to be dedicated to construction projects of roads in the state of South Carolina. Does that tell you which construction projects and when? Well, I don't think it sets forth, but those are usually subject to the DOT who decides where they want the construction projects to take place. So there is that. So you have no, what do you guys do? You have no discretion? No, we have certain autonomy. We can enter into contracts and so forth. But the reality of it, and this is why it's so important, and this is why I focus so much on HUDO, and even RISDO, they're really looking at the practical effect. You have to look at... How can we do that? I guess the question is if we were addressing the 11th Amendment, how can we do that without a factual development? You've done it and you do it most of the time. And frankly, most 11th Amendment cases are found on a 12B basis. Well, but oftentimes that's because they're like clear statutory commands, right? And so if there's a statute that says that the state is liable for all debts, we don't need a factual development there. We don't have that. I agree. I understand that. But the point is that maybe you do have 11th Amendment immunity, but because we have to look at the practical consequences to determine that, at least assuming we get past CAFA, to really determine that, we actually need a factual record. And I would take issue with you that you need a factual record on that because I think that you've done it in Hutto and Risto without developing a factual record. I think you can figure out the practical... But I don't think they had the same questions, at least that I have, about what happens to the money. Like who's getting it? Who's got discretion over it? Who doesn't? I've got... It seems like to me those aren't clear and when I read the statutory commands, I had a little hard time following. And I think in those other cases they don't have the governor of the state as actually the head of your organization. And so the discretion goes to the state of West Virginia. Now in terms of developing a factual record, my reaction to that is if you understand and looking at the code sections and how that money is used and what our role is, I mean certainly there is a legal fiction of what we have to do because the state can't issue bonds. It can't incur debt. So Parkways does that. We're an entity that can issue bonds. But the reality of it is it is all controlled by the state. The practical impact of it is the state. And to give you an example, out-of-state folks like Ms. Monica who violate the tolls and don't pay the tolls and get fined for not paying the tolls after they're given notice to pay the tolls, those folks then want to disgorge the money that we have accumulated and is part of our budget. And to say that would not have some effect on the state of West Virginia, and again we're talking hypothetically, it certainly would. I'd also recommend that we look at how this deals with the dignity of a joint sovereign of the state of West Virginia. I do not know how this case on its face would not be an affront to the dignity of the state sovereignty of West Virginia. This, Parkways, is a tool of the state of West Virginia. It is an entity created by the state. It does have parts of it that are not... This is a little bit unfair, but I mean one feeling about looking at this entity is the state of West Virginia has for various reasons decided to work very hard for this not to be the state of West Virginia when it suits them to not be the state of West Virginia. And it's now arguing that it is the state of West Virginia when it suits them to be the state of West Virginia. And maybe I guess one thing of the dignity is, look, if West Virginia wants to run their turnpike through an entity of the State Department of Transportation, you can do that and you absolutely have 11th immunity. So just respond to that. There's something about the way this whole entity is set up that we want to be the state when it suits us and we don't want to be the state when it doesn't suit us. Well, I'd answer it this way. I hear what you're saying, but there are situations where we do not have immunity. And I think those do we've showed those in our brief. There are instances where we have consented to it. For example, if there's an issue with... That doesn't mean you didn't have immunity. It just means you've waived it. Well, we've consented to it. Yes, we've consented to it. I don't know if that's the same as waiver, but we've consented to it. So there are instances where we would not have immunity. But Your Honor, in all due respect, the way this legislative scheme is set up, part of it is that in order to issue bonds, the state has to create an entity to do that. And that is part of the problems of why you see... Well, and in order for that fiction to work as a matter of West Virginia law, we have to posit that this entity isn't the state. You just told me the state can't issue debt, so you have to create us to issue debt, which means that by hypothesis, you're not the state, because otherwise it would just be the state issuing debt, which you can't do. Well, Your Honor, that's in the bonds. That's what I'm saying. There's some contexts that we would not. For example, if there is a problem with the payment of those bonds, then we are liable for that. But in this scenario, in this fact pattern, absolutely not. And the thing also, I mean, we're talking about we should comply with the APA because we're a state entity. Well, if in fact we're not a state entity, which is they're saying we are, then why are we having this conversation we have to comply with the APA? I mean, that's another way of looking at this. This is nonsensical to me, if you think about it. So I would ask this court  vacate Judge Goodwin's order, find that there is 11th minimum immunity, but also find that the exemption in ACAFA, there's no jurisdiction, if you all can do that. But I think you're going to have to have enough on the record to say there's a state entity and it is likely or may have immunity. That is the answer in our view to this case. Thank you very much. Thank you. Thank you. Very quickly, we want to disgorge money from the state. Wrong. We don't. 12B, they indicated in their brief, they have the burden on a jurisdictional question. What do you mean wrong? Like you don't want money? I'm not sure I understood the first thing. I didn't understand your first thing. We're not seeking money from the state. Just from the authority? Yes. Only from the authority. And if the authority has no money, we don't get a judgment. I wasn't sure which word I was supposed to focus on in that sentence. I'm with you. Develop a factual record. Absolutely right. Evidence. It's their burden on a 12B. And on a 12B, they are allowed to go to horse the record. They're allowed to bring in evidence. They could have brought in the evidence, Your Honor, that you're asking about that showed that there was switching of money. When you said to the counsel, where does this come from in the West Virginia Code? He said, not in there. It isn't. The money doesn't go back and forth like that. That's not the way it works. Hutto, the reason why Hutto came down the way it did is because the South Carolina Constitution has a provision that indicates that the state is liable on pension plan obligations. Hutto is a pension plan case. When the state statutes say the state FISC is liable, then there's 11th Amendment immunity. That's not this case. Ristau, again, they went through the same thing that we had in Hess, and they asked, is there this intermingling of money and back and forth? And Ristau, South Carolina, created the turnpike and funded it massively throughout every single year. Where do you want me to look? I want to just go back to Hess for a minute, and I don't want you to waste too much time on it, but do you have a belief that the court rejected the idea that we look both at profits and 50-51 of the U.S. Code? 50-51. 531, I think it is, or something. I got it. That's all I need. Thank you. And now back to the burr under the saddle. I've got a question for the panel. Not allowed. Not allowed. Go with God on that. This weird provision of CAFA, which says that if it's a state, Judge Richards and all of you said, you have to first establish that. Or a government entity. Government entity. The county. The county. The city of Cleveland. Wrong circuit, but Cleveland, Tennessee. I don't know if Tennessee is in this circuit, but maybe foreclosed. That's easy. The answer is no. Lincoln County v. Lennon says that entity doesn't have 11th Amendment immunity. May be foreclosed by immunity? That's not what the statute says. It says may be foreclosed. That the district court may be foreclosed from entering a judgment. If there's a viable statute of limitations, you're foreclosed from entering a judgment. There's all sorts of defenses that foreclose the court from entering a judgment. Those defenses are all waivable. This defense is waivable. That's why it is a state actor. Government entity. You're done. Because there's dozens of defenses that may foreclose that judgment. We agree that the all the boots in the district court opinion, all the boots are ECTA boots. There's no such thing as a cash only boot. We now realize that. But we also agree that the defendant has the authority under the Enabling Act to enact any kind of... Wait, can I go back? I just realized I don't understand the point you just made about D-5A. Does that mean that D-5A applies in literally every case or that it never... I don't really understand. You're right. Every defendant may have some defense that would foreclose relief. In your view, does that mean... It obviously isn't your view that a court never has jurisdiction over a state entity. What point do you think that does for you? It's my view that it doesn't mean that when you see a state actor or a governmental entity, you automatically say, there can be an immunity defense. Case is over. But when do you think D-5A applies ever then? Give me a case that you think D-5A precludes jurisdiction. When there is immunity. But that's completely unnecessary because that's like saying, in a case where a defendant has a valid defense, the court lacks subject matter jurisdiction, and that's insane. I'm sorry, I'm not sure. Can I ask a different question? Can I go back to Hess? Because when I read it, would I... This is what I thought you were pointing to, right? So the point of Port Authority, the point that the court rejects there is the Port Authority doesn't return money to the state, it instead uses money for other public projects that the state might somehow otherwise do. Just like charities perform public projects that the state otherwise might do. But that's not a direct funding connection, right? That's that they're serving the public good, which means... Like, Hess doesn't address this issue, is what I'm getting at. May I continue? Please. I think that that's what my opposing counsel was saying, is they take this money, and through some black box magic, they suddenly fund other roads in the state of West Virginia than the turnpike. But the question is, does it go to DOT, right? Because I think there's a statutory provision that suggests it goes to DOT, and DOT then funds it. And if it's going to DOT, and maybe that's a factual question, I understand, but Hess wouldn't address that question. We think Hess does because we think that the teaching of Hess is the fact that the state might benefit from the... Right, but you said the suggestion that they return profits. Hess doesn't say about returning profits. Hess says if you're otherwise doing good, that doesn't count. I think Hess talks about discretion. American Red Cross. If it's discretionary that the employer does benefit to the state, and the state says, if you get a judgment, we won't get that benefit. We won't get those funds. We won't get that ingenue. It's all the same. It doesn't matter because the state isn't liable on the judgment, and the fact that the judgment is rendered doesn't put the state at risk. And here, the issue isn't the authority of which entity passed this toll, passed this fee, passed this sanction. It's, was it rule made? And when we talked to Judge Haytens, when you asked that one question, I read you the language of the statute. That exemption does not apply to the Administrative Procedure Act. Therefore, we ask that you reverse the judgment of the district court and remand for further proceedings. And thank you very much for having us for my first time at the Fourth Circuit. I appreciate it. We enjoyed the argument from both counselors. You did a fine job, and come visit us again. We're not so far away.
judges: Diana Gribbon Motz, Julius N. Richardson, Toby J. Heytens